UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GERALD KENDU HALL,

                Plaintiff,

        v.                                  **MEMORANDUM AND ORDER**

COMMISSIONER OF SOCIAL SECURITY,              19-CV-5138 (RPK)

                Defendant.
------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Gerald Kendu Hall challenges the Commissioner of Social Security's determination that he is not disabled and thus ineligible for disability insurance benefits under the Social Security Act. Plaintiff and the Commissioner have each moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons below, plaintiff's motion is granted and this case is remanded to the agency for further proceedings.

## BACKGROUND

**I.    Statutory and Regulatory Framework**

      Federal disability insurance benefits are available to individuals who are "disabled." 42 U.S.C. § 423 *et seq*. The Social Security Act defines the term "disability" to mean an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

*Id.* § 423(d)(1)(A). The "physical or mental impairment" must stem from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner of Social Security utilizes a five-step process to determine whether a claimant is "disabled" as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). If "an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The five-step disability analysis proceeds as follows:

1. The Commissioner must first determine whether the claimant is engaged in "substantial gainful activity." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022); *see* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. If the claimant is not engaged in substantial gainful activity, the Commissioner must then determine whether the claimant has a "severe physical or mental impairment, or combination of severe impairments" that limits the claimant's ability to work. *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. If the Commissioner finds the claimant has a severe impairment or combination of severe impairments, the Commissioner next considers "whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has a listed impairment, the Commissioner must deem the claimant disabled and conclude the disability analysis. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. If the claimant does not have a listed impairment, the Commissioner must determine "whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of [the claimant's] past relevant work." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Finally, if the claimant is unable to perform his or her past relevant work, the Commissioner must determine "whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden of proof for this analysis lies with the claimant for the first four steps of the inquiry but shifts to the Commissioner for the final step. *See Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019).

## II. Plaintiff's Social Security Disability Insurance Application

Plaintiff was born on May 9, 1959. Certified Administrative Record 40 ("AR") (Dkt. #9). He was 5'7" and weighed 240 pounds at the time of the administrative hearing. *Ibid*. Plaintiff has

2

two years of college education and worked as a stock clerk from 1989 through 2010. *Id*. at 41–42, 61, 177. Plaintiff was laid off in April 2010 and resumed employment as a janitor in August 2013. *Id*. at 42, 177. He stopped working in October 2013. *Id*. at 177.

Plaintiff applied for disability insurance benefits and supplemental security income benefits on June 1, 2016. *Id*. at 150–53. In his application, plaintiff claimed he became disabled on October 2, 2013, due to arthritis, ankle problems, back problems, knee problems, high blood pressure, and diabetes. *Id*. at 150, 175.

Plaintiff's treating physician, Dr. Anthony Go, completed a physical assessment form in June 2016. *Id*. at 226–27. Dr. Go diagnosed plaintiff with obesity, type 2 diabetes mellitus, and insomnia. *Id*. at 226. He opined that plaintiff could sit, stand, and walk for six hours in an eight-hour workday; that plaintiff could walk two to three miles without rest or significant pain; that plaintiff could frequently lift up to twenty pounds and occasionally lift up to fifty pounds; that plaintiff's impairments would cause him to be absent from work once or twice a month; and that plaintiff would need to take a fifteen to thirty minute unscheduled break every three to four hours. *Id*. at 226–27.

Plaintiff attended a consultative examination with Dr. Iqbal Teli in July 2016. *Id*. at 310. Plaintiff complained of "sharp" pain in his left ankle, knee, and lower back. *Ibid*. Plaintiff rated the knee pain and the back pain a ten out of ten, and he rated the ankle pain an eight out of ten. *Ibid*. Dr. Teli stated that plaintiff was obese but that plaintiff did not appear to be in acute distress. *Id*. at 311. Dr. Teli reported that plaintiff had a normal gait and stance, that plaintiff could squat to 90%, that plaintiff had "5/5" strength in the upper and lower extremities, and that plaintiff had limited knee flexion but otherwise had a full musculoskeletal range of motion. *Id*. at 311–12. An x-ray of plaintiff's knee revealed a patellar spur, and an x-ray of plaintiff's spine revealed

degenerative joint disease. *Id*. at 314–15. Dr. Teli opined that plaintiff "has mild restrictions for prolonged walking and prolonged standing." *Id*. at 312–13.

Plaintiff continued seeing Dr. Go. In August 2016, plaintiff reported having "acceptable" pain control but stated that he was not taking his diabetes medication consistently. *Id*. at 529. In September 2016, plaintiff complained of calluses and his inability to walk far without a cane. *Id*. at 518. In February 2017, plaintiff reported he had stopped exercising and began pool therapy the following month. *Id*. at 494, 501. Plaintiff complained of back and leg pain in July 2017, and an x-ray revealed small bilateral joint effusions and degenerative joint disease in both knees. *Id*. at 464–66. The following month, plaintiff reported experiencing bilateral knee pain that was exacerbated by using stairs and changing position from sitting to standing. *Id*. at 458. Plaintiff was referred to physical therapy, *id.* at 466, and he reported "doing some push up and sits up every morning and bedtime" and "doing a lot of walking back and forth at school," *id*. at 442.

In May 2018, plaintiff complained of pain in his right arm, a limited range of motion that had lasted for more than two weeks, chronic back pain, neck stiffness, and pain radiating from his neck area to his right shoulder. *Id.* at 571. He rated the pain a ten out of ten. *Ibid.* An x-ray of plaintiff's right shoulder revealed mild acromioclavicular arthrosis, and an x-ray of plaintiff's cervical spine revealed mild degenerative changes. *Id.* at 562–63.

### III. The Administrative Hearing

Plaintiff attended an administrative hearing in July 2018. *Id*. at 34–53. He testified that he stopped working in 2013 because his back "gave way," he "couldn't lift anything," his arms would "get[] numb," and his ankle would start to "inflame[] with pain." *Id.* at 43. Plaintiff stated that he took pain medication twice a week. *Id.* at 44. He testified that he could walk two to three blocks, that he could stand for fifteen to thirty minutes, that he could sit for fifteen to thirty minutes, and

4

that he could lift up to five pounds. *Id*. at 45. Plaintiff reported having difficulty grocery shopping because he could not carry things, and he stated he often felt dizzy. *Id*. at 46–47.

A vocational expert testified at the hearing. *Id*. at 50–53. The administrative law judge ("ALJ") asked the vocational expert to consider a hypothetical individual of plaintiff's age, education, and work experience, who "is limited to medium work; [could] occasionally climb ramps and stairs; [could] never climb ladders, ropes, and scaffolds; [could] occasionally kneel, crouch, or crawl"; and "would be absent once a month." *Id*. at 51. The vocational expert testified that this hypothetical witness could perform work in the national economy, including as a linen room attendant, a laundry worker, and a press tender. *Id*. at 51–52.

## IV. The ALJ's Decision

The ALJ denied plaintiff's application for a period of disability and disability insurance benefits in August 2018. *Id.* at 7. The ALJ concluded that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id.* at 10. In reaching her decision, the ALJ proceeded through the five-step analysis set forth in 20 C.F.R. § 404.1520(a). *Id.* at 12–21. Her factual findings included the following:

> **Step One.** Plaintiff has not engaged in substantial gainful activity since October 2, 2013, the alleged onset date. *Id.* at 12; *see* 20 C.F.R. § 404.1571 *et seq*.
>
> **Step Two.** Plaintiff has the following severe impairments: "Diabetes Mellitus, lumbar spine degeneration, right knee degenerative joint disease, [and] left knee derangement." AR 13. The ALJ concluded that although plaintiff is obese, "there is nothing in the record to indicate that his weight would prevent him from working at substantial gainful activity levels. Therefore, the claimant's weight would not have more than a minimal effect on his ability to work and is therefore considered non-severe." *Ibid*.; *see* 20 C.F.R. § 404.1520(c).
>
> **Step Three.** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), or 9.00 (endocrine disorders), in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

5

**Step Four.** Plaintiff "has the residual functional capacity to perform medium work . . . except that he can only occasionally climb ramps and stairs and can occasionally kneel, crouch, or crawl. [Plaintiff] can never climb ladders, ropes or scaffolds, and will be absent from work once a month." AR 13. In reaching this conclusion, the ALJ gave "considerable weight" to Dr. Go's 2016 medical opinion "except for the level of absences," which the ALJ found to be "speculative." *Id.* at 19; *see* 20 C.F.R. § 404.1565. The ALJ did not address Dr. Go's opinion that plaintiff needed to take fifteen-to-thirty-minute breaks every three to four hours. AR 19.

**Step Five.** Plaintiff is capable of performing his past relevant work as a stock clerk, and there are other jobs existing in the national economy that plaintiff can perform. These include a linen room attendant, laundry worker, and press tender. AR 20; *see* 20 C.F.R. §§ 404.1569, 404.1569a.

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council. AR 1. Plaintiff submitted to the Appeals Council a physical assessment conducted by neurologist Dr. Elena Belkin, who opined that plaintiff could never lift more than ten pounds, could not stand or walk for more than two hours in a standard workday, would need to take an unscheduled fifteen-to-twenty-minute break three or four times a day, and would be absent from work three or four times a month. *Id*. at 2, 31–32.

The Appeals Council denied plaintiff's appeal. *Id*. at 1–3. It concluded that Dr. Belkin's opinion "does not show a reasonable probability that it would change the outcome of the decision." *Id*. at 2. Plaintiff then timely filed this action.

## STANDARD OF REVIEW

Claimants who are denied disability insurance benefits by the Social Security Administration may seek judicial review. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court does not "decide *de novo* whether a claimant was disabled" or "answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration] regulations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Instead, the Court's review is limited to determining whether the Commissioner's decision is free of legal error

and supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Ibid*. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ibid*. (citation omitted). In applying the substantial-evidence standard, the Court must "defer[] to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. If substantial evidence supports the Commissioner's findings, such findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). Remanding to the Commissioner is appropriate "when it appears that the ALJ has failed to consider relevant and probative evidence which is available." *Lopez v. Sec'y of Dept. of Health and Human Servs.*, 728 F.2d 148, 150–51 (2d Cir. 1984).

## DISCUSSION

Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

ALJs are required to consider all relevant evidence when determining a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(3). In doing so, an ALJ must "weigh the conflicting evidence in the record," *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998), and "make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53,

7

56 (2d Cir. 2013). "Reviewing courts decry administrative cherry-picking of relevant evidence. This term refers to crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Jackson v. Comm'r of Soc. Sec.*, No. 15-CV-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019); *see Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019). "Cherry-picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Jackson*, 2019 WL 7283518, at *7.

The ALJ committed reversible error by failing to explain why she did not incorporate favorable aspects of Dr. Go's opinion into the RFC determination. The ALJ accorded "considerable weight" to Dr. Go's 2016 opinion, AR 19, and she acknowledged that Dr. Go "indicated that [plaintiff] would need to take unscheduled breaks during an eight-hour workday every three to four hours for fifteen to thirty minutes," *id*. at 15; *see id.* at 226. However, the ALJ failed to address this aspect of Dr. Go's opinion and did not incorporate this limitation into the RFC determination. *See id*. at 13–20. Courts in this circuit have consistently found that an ALJ commits reversible error by giving considerable weight to a physician's opinion without addressing or adopting portions of the opinion that are favorable to the plaintiff. *See, e.g.*, *Jackson*, 2019 WL 7283518, at *7 ("Though the ALJ gave 'great weight' to the opinion of Dr. Echevarria, he failed to incorporate Dr. Echevarria's finding that plaintiff would only be capable of handling brief and superficial contact with others. This was error."); *Backus v. Astrue*, No. 3:05-CV-1180 (NAM), 2008 WL 4519006, at *16 (N.D.N.Y. Sept. 29, 2008) ("The ALJ also failed to explain why he afforded 'considerable weight' to the opinions of Drs. Dubro and Noia without addressing the portions of their opinions that are seemingly favorable to plaintiff. This error must be addressed on remand."); *Vazquez v. Comm'r of Soc. Sec.*, No. 14-CV-6900 (JCF), 2015 WL

8

4562978, at *17 (S.D.N.Y. July 21, 2015) ("[T]he ALJ accorded 'great weight' to Dr. Bougakov's opinion; however, he did not discuss Dr. Bougakov's 'guarded' prognosis, his findings about [plaintiff's] limitations in cognitive and intellectual functioning, or his assessment that her psychiatric problems 'may significantly interfere with [her] ability to function on a daily basis.' These determinations weigh in favor of a more limited residual functional capacity, and thus [the ALJ] was not permitted to disregard them."); *Devine v. Saul*, No. 18-CV-838 (JJM), 2020 WL 1649819, at *8 (W.D.N.Y. Apr. 3, 2020) ("[T]he ALJ acknowledged, but did not discuss, Dr. Luna's moderate limitation on plaintiff's ability to deal with workplace stress. . . . Further, [the ALJ] assigned Dr. Luna's opinion 'great weight' . . . . Accordingly, remand is required for a proper analysis that explains [the ALJ's] treatment of this limitation."); *see also, e.g.*, *Petersen v. Astrue*, 2 F. Supp. 3d 223, 233–34 (N.D.N.Y. 2012); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006); *Theresa B. v. Kijakazi*, No. 3:20-CV-0985 (DEP), 2022 WL 484256, at *5 (N.D.N.Y. Feb. 17, 2022); *Marshall L. v. Berryhill*, No. 17-CV-128, 2018 WL 2192191, at *13 (W.D.N.Y. May 14, 2018); *Benique v. Kijakazi*, No. 20-CV-3243 (PAE) (OTW), 2021 WL 4894582, at *6 & n.5 (S.D.N.Y. Sept. 10, 2021) (collecting cases).

The Commissioner offers two counterarguments, neither of which is persuasive. First, the Commissioner argues that "[t]his portion of Dr. Go's opinion . . . coincides with the commonly occurring scheduled breaks and lunch period contemplated in an eight-hour workday." Def.'s Mot. 13–14 (Dkt. #17). However, Dr. Go opined that plaintiff needed *unscheduled* breaks every three to four hours. AR 226. The record does not support the Commissioner's suggestion that this aspect of Dr. Go's opinion refers to regularly scheduled breaks that occur throughout the workday.

Second, the Commissioner argues that the agency's decision should be upheld because other evidence in the record supports the ALJ's RFC determination. *See* Def.'s Mot. 11–14. The

9

Commissioner cites evidence suggesting that plaintiff "was able to sit for six hours in an eight-hour workday," "was able to frequently lift and carry up to 20 pounds," had "unremarkable objective physical examination findings," and had "extensive activities of daily living." *Id*. at 12–13. However, this Court may not "affirm an administrative action on grounds different from those considered by the agency." *Melville*, 198 F.3d at 52; *see SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943). The ALJ offered no explanation for rejecting Dr. Go's opinion that plaintiff required unscheduled breaks every three to four hours, and "[t]his Court cannot re-weigh the evidence on the ALJ's behalf or create a post-hoc explanation for the fact that [s]he gave great weight to an opinion that contradicted h[er] RFC assessment." *Petersen*, 2 F. Supp. 3d at 234. And while the Second Circuit has held that remand is unnecessary where the Court is "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that h[er] determination was supported by substantial evidence," *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982), the ALJ's decision "does not provide a sufficiently clear indication regarding h[er] unexplained justification for implicitly rejecting this portion of Dr. [Go's] opinion to provide a basis for meaningful judicial review," *Theresa B.*, 2022 WL 484256, at *5.

Accordingly, this case is remanded for further proceedings consistent with this order. Because the ALJ will be required the consider the entire record on remand, the Court does not consider plaintiff's argument that the Commissioner erred by failing to properly consider Dr. Belkin's opinion. Similarly, the Court does not reach plaintiff's remaining argument that the Commissioner erred in concluding that plaintiff's obesity is not a severe impairment. *See, e.g.*, *Blowe v. Comm'r of Soc. Sec.*, No. 19-CV-2658 (JS), 2020 WL 3129062, at *5 n.10 (E.D.N.Y. June 12, 2020); *Wikiert v. Comm'r of Soc. Sec.*, No. 17-CV-6799 (PKC), 2019 WL 959665, at *2 n.3 (E.D.N.Y. Feb. 26, 2019); *Schweers v. Berryhill*, No. 19-CV-6189 (RWL), 2020 WL 5518326,

at *14 (S.D.N.Y. Sept. 14, 2020); *Crosse v. Colvin*, 73 F. Supp. 3d 169, 173 (N.D.N.Y. 2014); *Laura C. v. Comm'r of Soc. Sec.*, 529 F. Supp. 3d. 64, 73 (W.D.N.Y. 2021); *Susan G. v. Comm'r of Soc. Sec.*, No. 20-CV-830S, 2021 WL 1920815, at *4 (W.D.N.Y. May 13, 2021).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is granted, and this case is remanded for further proceedings consistent with this order.

SO ORDERED.

                                                */s/ Rachel Kovner*
                                                RACHEL P. KOVNER
                                                United States District Judge

Dated: May 11, 2023
       Brooklyn, New York